IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHAN CLAY BRUNO,

    Petitioner,                        No. CIV S-02-2339 LKK EFB P

    vs.

DIRECTOR, CALIFORNIA DEPT.
OF CORRECTIONS, et al.,

    Respondents.                  <u>FINDINGS AND RECOMMENDATIONS</u>

                              /

      Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 1999 judgment of conviction entered against him in the Sacramento Superior Court on charges of attempted murder, assault with a deadly weapon, battery with serious bodily injury, and possession of a weapon (a dagger), with findings that he personally inflicted great bodily injury. He seeks relief on the grounds that his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

1

## I.  Procedural and Factual Background[1]

A jury convicted defendant Nathan Clay Bruno of attempted murder (Pen. Code, §§ 187, subd. (a), 664; further statutory references are to the Penal Code; count one), assault with a deadly weapon (§ 245, subd. (a) (1); count two), battery with serious bodily injury (§ 243, subd. (d); count three), and possession of a weapon, a dagger (§ 12020, subd. (a) (4); count four), and found that he personally inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of counts one, two and three. (footnote omitted.)  The trial court found that he had suffered one prior serious felony conviction (§ 667, subd. (a)) and two "strike" convictions (§§ 667, subds. (b) - (I), 1170.12), and had served a prior prison term (§ 667.5, subd. (b)).  He was sentenced to state prison on count one for 36 years to life.  Sentences on counts two and three were stayed pursuant to section 654; a 100-day sentence on count four was deemed already served.

\*\* \*

FACTS

*Prosecution case in chief*

On May 4, 1998, at about 10:30 a.m., James Breitenstein was in Cesar Chavez Park in Sacramento.  He had a couple of beers with some people at a table.  Defendant approached Breitenstein.  The people at the table asked defendant to leave, and a verbal argument broke out.  Breitenstein scuffled and wrestled with defendant on the ground.  Then Breitenstein turned away from the argument.  As he was walking away, defendant slashed Breitenstein's neck and arm.  The lengthy neck wound cut through a muscle and injured blood vessels and a nerve.  The arm wound was defensive and severed some of the tendons to the hand.

Defendant quickly walked out of the park and proceeded toward 9th and J Streets and then toward K Street.

At 5:37 p.m. that afternoon, Community Service Guide Peter Milner saw defendant passing an alley on 10th Street between J and K Streets.  Defendant glanced quickly at Milner and kept on walking.

---

[1] The following summary is drawn from the April 27, 2001 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pps. 1-4, filed in this court on October 23, 2002, as Exhibit D to the petition.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events.  The court will therefore rely on the state court's recitation of the facts.

At 5:50 p.m. that afternoon, Sacramento Police Officer Ronald Chesterman contacted defendant at 10th and G Streets. There were no weapons on him. Defendant was arrested and taken to police headquarters. He had visible injuries indicating that he may have recently been in a fight.

Criminalist Mary Hansen determined that a bloodstain on defendant's clothing was consistent with his own blood. Breitenstein could not be excluded as the source of other bloodstains on defendant's clothing.

Sacramento Police Detective Skip Buck interviewed defendant. The interview was videotaped and excerpts from the tape were played for the jury.

In the interview, defendant admitted being in Cesar Chavez Park from 8:15 a.m. until 1:15 p.m. However, he claimed to be unaware of the "five police cars, ambulance, fire trucks, sirens blaring, lights flashing, crowds gathering," that resulted from the attack. Defendant knew that the investigation involved assault with a deadly weapon before the officers told him what the offense was.

*Defense*

Loaves and Fishes is an agency that provides services to homeless people. It maintains a roster of persons who use its lunch service. The roster for the week of April 29, 1998, indicated that defendant was issued a lunch ticket on May 4, 1998. Lunch tickets could be picked up between 7 a.m. and 12:30 p.m. The time a ticket is picked up is not noted on the roster.

Margaret-Mary Canales, a Loaves and Fishes employee, testified that defendant had regularly visited the agency for three to four months prior to May 1998. He typically would arrive between 10:15 and 10:45 a.m. to pick up his lunch ticket. Canales had no recollection of defendant being present on May 4, 1998.

*Rebuttal*

On May 4, 1998, Ricardo Vargas was a security officer in a building across from Cesar Chavez Park. At 10:47 a.m., a woman entered the building and reported a stabbing in the park. Vargas went to the park and found Breitenstein, who described his assailant as an Hispanic male, five feet six inches tall, dressed in black, and carrying a green coat.

Detective Buck testified that the walk from Cesar Chavez Park to Loaves and Fishes takes approximately 15 minutes.

////

3

Petitioner's judgment of conviction was affirmed on appeal in an unpublished decision dated April 27, 2001. Pet., Ex. E. Petitioner subsequently filed a petition for review in the California Supreme Court, which was denied by order dated July 11, 2001. *Id.*, Ex. F. The instant habeas petition was filed on October 23, 2002.

**II.    Analysis**

    **A. Timeliness of Petition**

On May 2, 2003, respondent filed a motion to dismiss the petition, contending that it is time-barred under 28 U.S.C. § 2244(d). Petitioner conceded that the petition was untimely, but contended that he was entitled to equitable tolling of the limitations period due to mental and vision disabilities, functional illiteracy, and lack of access to the library. By order dated December 10, 2003, the court denied respondent's motion to dismiss without prejudice, informing the parties that the matter would be resolved with the merits of the petition. Because AEDPA's statute of limitations is not jurisdictional, *see Green v. White*, 223 F.3d 1001, 1003-04 (9th Cir. 2000), and it is apparent that petitioner's claims must be denied, the court elects to deny petitioner's habeas petition on the merits rather than reach the equitable tolling issues.

    **B. Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

4

indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**C. Ineffective Assistance of Counsel**

Petitioner claims that his trial counsel rendered ineffective assistance by failing to request expanded jury instructions on eyewitness identification. Pet. at 5; Points and Authorities attached to Petition (P&A) at 7-18. The California Court of Appeal explained the background to this claim and its decision thereon as follows:

> Defendant contends his trial counsel rendered ineffective assistance by failing to request that the standard eyewitness identification instructions (CALJIC Nos. 2.91 & 2.92) be supplemented with two additional instructions: 1 FORECITE F2.92b, which lists four additional pertinent factors to be considered; and Judicial Council Proposed Instruction No. 415, which lists three relevant questions for the jury to consider. We

5

are not persuaded.

*Eyewitness testimony*

Breitenstein testified that his memory of defendant's hair and facial features was "dead certain," even if "still a little but [sic] blurry." He had a good chance to observe defendant's face during the attack. His memory at trial was "the same" as it had been at the preliminary hearing.[2] When shown a photographic lineup at the hospital the day after the incident, Breitenstein immediately selected the photograph of defendant. However, after 30 seconds, he recanted and selected a different photograph. At trial, Breitenstein explained that he was sedated at the time, and the "events of what had happened to" him were not "fresh in [his] memory," because of the sedation.

Kimberly Clayborn was in the park and witnessed the incident from a distance of 35 to 50 feet. Clayborn identified defendant from the photographic lineup, but she was unable to identify him at trial.

Margie Garcia, who was with Clayborn during the incident, told police that she doubted she would be able to identify the assailant. She was never shown the photographic lineup. She could not identify defendant at the preliminary hearing or at trial. When shown photographs of defendant that were taken after his arrest, she testified that one picture "really looks like" the assailant. The person in court was "more clean-cut" and his hairstyle was different.

Jose Luis Hernandez had seen defendant in the park on many occasions prior to the offenses, and defendant "most of the time" was clean. He did not get a good look at the assailant because he was not watching the entire time and, when he did, he saw the man mostly from his back. Hernandez viewed the photographic lineup and selected a person other then defendant. He was only 50 percent certain of his selection. At the preliminary hearing, Hernandez first identified defendant and then said that he was not certain, because the assailant was dirty. At trial, Hernandez could not identify defendant because he then was clean.

*Eyewitness Instructions*

The jury was instructed pursuant to CALJIC No. 2.20 that "[i]n determining the believability of a witness you may consider

---

[2] Breitenstein testified in his own words that his memory was "the same" as at the preliminary hearing. When defense counsel asked him whether he was claiming that his memory at trial was "better" than at the earlier hearing, Breitenstein did not correct counsel but simply responded, "Yes." The basis for counsel's question is not apparent on the record.

6

anything that has a tendency to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following: [¶] The extent of the opportunity or the ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified; [¶] The ability of the witness to remember or to communicate any matter about which the witness has testified; [¶] The character and the quality of that testimony; . . . [¶] The existence or nonexistence of any fact testified to by the witness; . . . [¶] A statement previously made by a witness that is consistent or inconsistent with his or her testimony."

The jury was instructed pursuant to CALJIC No. 2.91 that "The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged. [¶] If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt whether the defendant was the person who committed the crime, you must give the defendant the benefit of that doubt and find him not guilty."

The jury was instructed pursuant to CALJIC No. 2.92 that "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crimes charged. In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the . . . witness' [sic] identification of the defendant, including, but not limited to any of the following: [¶] The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act; [¶] The stress, if any, to which the witness was subjected at the time of the observation; [¶] The witness' [sic] ability, following the observation, to provide a description of the perpetrator of the act; [¶] The extent to which the . . . defendant either fits or does not fit the description of the perpetrator previously given by the witness; [¶] The cross-racial or ethnic nature of the identification; [¶] The witness' [sic] capacity to make an identification; [¶] Whether the witness was able to identify the alleged perpetrator in the photographic or physical lineup; [¶] The period of time between the alleged criminal act and the witness' [sic] identification; [¶] Whether the witness had prior contacts with the alleged perpetrator; [¶] The extent to which the witness is either certain or uncertain of the identification; [¶] Whether the witness' [sic] identification is in fact the product of his or her own recollection; [¶] Any other evidence relating to the witness' [sic] ability to make an identification."

1 FORECITE F2.92b would have supplemented CALJIC No. 2.92 by adding four additional pertinent factors: (1) the length of time the witness saw the perpetrator; (2) the positions and distances between the witness and the perpetrator at various times; (3)

7

Whether the witness' memory was or was not affected by the intervening time and events; and (4) At time of arrest, defendant was not dressed in clothing matching the description of the perpetrator.

The Judicial Council's draft instruction would have posed three relevant questions for the jury to consider; (1) Did the witness ever fail to identify the defendant; (2) Did the witness ever change his or her mind about the identification; and (3) How certain was the witness when he or she made an identification.

*Analysis*

""'[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]'" (*People v. Avena* (1996) 13 Cal.4th 394, 418; fn. omitted.)

Defendant's trial counsel was not deficient for having failed to request instruction on the four factors identified by 1 FORECITE F2.92b. Defendant has not cited any authority approving the FORECITE instruction in its present form and we are not aware of any. The first three FORECITE factors evidently were taken from the modified version of CALJIC No. 2.92 that was given in *People v. Johnson* (1992) 3 Cal.4th 1183, at page 1230, footnote 12. However, *Johnson* discussed only the third factor and did so only in the course of rejecting the defendant's claim that a more extensive instruction was required. (*Id.* at pp. 1230-1234.) Because the instruction has not been held to be necessary, or even proper, in the circumstances of this case, defendant's trial counsel was not ineffective for having failed to request it.

Nor was defendant's trial counsel ineffective for having failed to request instructions on the three factors identified by the Judicial Council. Because the draft instruction has not been promulgated in final form, there necessarily is no authority holding it to be a necessary or a proper instruction in the circumstances of this case.

Finally, defendant contends trial counsel should have requested an instruction that "You must view eyewitness testimony with caution and evaluate it carefully." The language is derived from *People v. Johnson, supra*, 3 Cal.4th at page 1230, footnote 12. Defendant's claim has no merit.

8

> 1  We have already explained that, of the four eyewitnesses at trial, Breitenstein had the greatest vantage for the longest period, and he alone positively identified defendant. Trial counsel could rationally believe that an instruction telling jury to view all four eyewitnesses' testimony with caution would damage Breitenstein's unfavorable testimony the least. Because the record fails to disclose that counsel had no rational tactical purpose for his omission, the ineffectiveness claim fails on appeal. (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.)

Opinion at 5-10.

### 1. Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id. See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of *Williams v. Taylor*, 529 U.S. 362 (2000). *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000).

**2. Analysis**

Petitioner has failed to meet either prong of the *Strickland* test. First, as respondents point out, the eyewitness instructions given at petitioner's trial covered the general substance of the additional instructions suggested by petitioner, albeit in slightly different language. Specifically, the instructions given advised the jury that they should consider the ability of the witness to actually see the perpetrator, the ability of the witness to remember the perpetrator despite the length of time between the crime and the eyewitness testimony, and whether the perpetrator fit the description of the defendant. Clerk's Transcript on Appeal (CT) at 218. Although these instructions were not couched in the exact terms of the 1 FORECITE F2.92b supplemental instructions, they covered the same points. Petitioner's jury was also instructed that they should consider whether the eyewitness was able to identify the perpetrator in a photographic lineup, whether the witness was certain or uncertain of the identification, and the extent to which the witness was certain of the identification. *Id.* These instructions were essentially cumulative of the three questions contained in the Judicial Council's draft instruction. Counsel's failure to request cumulative jury instructions did not fall outside the wide range of professionally competent assistance. *See Strickland*, 466 U.S. at 689.

Petitioner also claims that his trial counsel should have requested an instruction to the effect that eyewitness testimony should be viewed with caution. P&A at 15. Petitioner's jury

10

was instructed that they should consider the believability of eyewitness testimony in conjunction with other factors that may "bear upon the accuracy of the . . . witness' identification of the defendant." CT at 218. This instruction alerted the jury that they should view eyewitness testimony carefully. In addition, the need for cautionary instructions on eyewitness testimony diminishes as corroborating evidence is introduced at trial. *See United States v. Masterson*, 529 F.2d 30 (9th Cir. 1976). Here, as the California Court of Appeal explained, the petitioner admitted being in the park at the time of the attack; he volunteered to police investigators that he knew the crime involved an assault with a deadly weapon before he was informed of that fact by the police; he claimed to be unaware of the police vehicles, sirens, and flashing lights at the park at the time of the crime; and he had injuries which were consistent with being involved in a fight. Further, petitioner's trial counsel pointed out the weaknesses of the eyewitness testimony at length during his closing argument, and he told the jurors to "critically review" the evidence. Reporter's Transcript (RT) at 515-18. This placed the issue squarely before the jury and lessened the need for cautionary instructions. *See Weighall*, 215 F.3d at 1063 (trial counsel's failure to request jury instruction not ineffective where evidence introduced at trial, instructions given, and counsel's argument put the relevant issue before the jury); *Willis v. United States*, 87 F.3d 1004, 1008 (8th Cir. 1996) (failure to proffer specific instruction on good faith not ineffective assistance where counsel asserted good faith defense repeatedly in closing argument); *United States v. Haddock*, 12 F.3d 950, 959 (10th Cir. 1993) (failure to request defense instruction not ineffective assistance of counsel where defense and evidence were clearly before jury even without instruction).[3]

////

---

[3] In federal criminal trials, a general instruction on credibility of witnesses and the government's burden of proof on the issue of identification are ordinarily sufficient to alert the jury that eyewitness identification testimony may be unreliable and should be viewed with caution. *United States v. Miranda*, 986 F.2d 1283, 1285-86 (9th Cir. 1993) ("[e]ven where the only evidence is identification evidence, general instructions on the jury's duty to determine the credibility of the witnesses and the burden of proof are fully adequate").

11

Finally, as noted by the California Court of Appeal, a jury instruction to view all eyewitnesses with caution may have impacted the testimony of the weaker eyewitnesses, but would have had "the least" impact on the eyewitness testimony of the victim, who had the greatest opportunity to view his attacker. Opinion at 10. Under these circumstances, counsel's decision not to request a cautionary instruction was reasonable and did not deny petitioner of effective assistance. The court also notes that the jury appears to have carefully considered the conflicting eyewitness testimony, deliberating for several days and asking for a read-back of some of that testimony. CT at 175-76, 179. Additional instructions on the duty to carefully consider the eyewitness testimony therefore appears to have been unnecessary under the facts of this case.

Petitioner has also failed to demonstrate prejudice with respect to this claim of ineffective assistance. Considering the given instructions as a whole and all of the evidence introduced at petitioner's trial, counsel's failure to request the additional jury instructions suggested by petitioner does not undermine confidence in the outcome. The decision of the California Court of Appeal rejecting petitioner's claim of ineffective assistance of counsel is not an unreasonable application of *Strickland*. Accordingly, petitioner is not entitled to habeas relief.

**D. Evidentiary Hearing**

Petitioner requests an evidentiary hearing on his claim of ineffective assistance of counsel. P&A at 6. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

////

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A petitioner must also "allege[] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).

Here, no additional factual supplementation is necessary and an evidentiary hearing is not appropriate. In addition, for the reasons described above, petitioner has failed to demonstrate that his counsel's actions constitute deficient performance or that he suffered prejudice as a result. Under these circumstances, petitioner could not obtain federal habeas relief because the state court's decision that petitioner's counsel did not render ineffective assistance is not an unreasonable determination of the facts under § 2254(d)(2). *See Schriro*, 550 U.S. at 481. For these reasons, an evidentiary hearing is not appropriate in this case.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 25, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14